IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CT-03214-M

RONALD McCLARY,          )
                         )
            Plaintiff,   )
                         )
    v.                   )    ORDER
                         )
DOCTOR JACKSON, et al.,  )
                         )
            Defendants.  )

This cause is before the court on plaintiff's motion for leave [D.E. 45] and defendant's motion for summary judgment [D.E. 48]. For the reasons discussed below, the court grants in part plaintiff's motion for leave and grants defendants' motion for summary judgment.

Statement of the Case:

On September 5, 2017, Ronald McClary, ("plaintiff"), a state inmate proceeding *pro se* and without prepayment of fees, filed this complaint under 42 U.S.C. § 1983. [D.E. 1, 2, 11]. Plaintiff generally alleges deliberate indifference to his medical needs, in violation of his Eighth-Amendment rights, while he was incarcerated at Maury Correctional Institution ("Maury"). See Compl. [D.E. 1]. Plaintiff alleges that, after Dr. DeGuehery, his treating physician at Maury, prescribed Ditropan to treat plaintiff's enlarged prostate, nocturia, and leakage of his overactive bladder, Dr. Rosemary Jackson ("defendant Jackson"), a physician on the North Carolina Department of Public Safety ("DPS") Utilization Review ("UR") Board, and J.R. Almondin ("defendant Almondin"), an employee in the Health Services Division, without justification, denied a UR Board review request to renew plaintiff's Ditropan prescription. Id. at 5.

On May 16, 2018, the court conducted its initial review under 28 U.S.C. § 1915, granted in part plaintiff's motions to amend his complaint, and allowed the action to proceed against defendants Jackson and Almondin. See Order [D.E. 19].

On July 24, 2018, DPS informed the court that it had no record of any employee named Almondin or Almondid. [D.E. 24].

On August 27, 2018, the court directed the North Carolina Attorney General to investigate whether defendant Almondin was a member of any DPS medical committee during the relevant timeframe, and, if so, to provide the court with either an executed waiver of service or defendant Almondin's last known address. Order [D.E. 28].

On September 21, 2018, defendant Jackson filed an answer [D.E. 30].

On September 26, 2018, the North Carolina Attorney General filed a response [D.E. 31], together with the declaration of Linda Ragland, [D.E. 31-1], confirming that a search of DPS employment records had not identified defendant Almondin or any person with a similar name.

On October 23, 2018, the court directed plaintiff to show cause why the complaint should not be dismissed without prejudice as to defendant Almondin due to plaintiff's failure to perfect service of process on this defendant. Order [D.E. 36]. Plaintiff filed a response to the order to show cause. [D.E. 38]. On December 10, 2018, the court extended until April 11, 2019, the time for plaintiff to perfect service of process on defendant Almondin. Order [D.E. 39].

On April 19, 2019, plaintiff informed the court that discovery had not revealed any information about defendant Almondin and that defendant Almondin was never served.[1] See Mot. [D.E. 45] at 1–2. This filing also moves the court for leave to introduce evidence to support

---

[1] Because plaintiff has failed to perfect service of process on defendant Almondin and the time to do so has passed, the court DISMISSES WITHOUT PREJUDICE the complaint as to defendant Almondin. See Fed. R. Civ. P. 4(m).

2

plaintiff's contention that oxybutynin "may be the most effective drug" for the treatment of his condition.[2] Id. at 2–3.

On May 13, 2019, defendant Jackson filed a motion for summary judgment [D.E. 48], a memorandum [D.E. 49], a statement of material facts [D.E. 50], and an appendix [D.E. 51].

Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiff about the pending motion for summary judgment, the consequences of failing to respond, and the response deadline. [D.E. 53].

On May 20, 2019, plaintiff filed an "amended appendix." [D.E. 54].

On May 23, 2019, plaintiff timely filed a response in opposition to the motion to dismiss [D.E. 55], and a document opposing defendant Jackson's statement of material facts [D.E. 56].

On January 7, 2020, this case was reassigned to the undersigned judge via a text order.

Statement of Facts:

The facts are undisputed unless otherwise noted. Plaintiff has been diagnosed prostatism, bladder dysfunction, and benign prostatic hypertrophy ("BPH" or "enlarged prostate"). Def.'s App. [D.E. 51-1], Jackson Decl. at ¶11; see [D.E. 55-1] at 30–31. Plaintiff was prescribed Ditropan, a brand name of the medication Oxybutynin.[3] Def.'s App. [D.E. 51-1], Jackson Decl. at ¶11; see [D.E. 55-1] at 30–31; Compl. [D.E. 1] at 5.

On February 3, 2017, at a DSP Pharmacy and Therapeutics Committee Meeting, "Oxybutynin was removed from the list of approved formulary medications, as a result of reports

---

[2] The court GRANTS IN PART the motion for leave, Mot. [D.E. 45], to the extent plaintiff seeks to introduce medical evidence regarding Oxybutynin.

[3] Defendant Jackson declares that Oxybutynin was prescribed to treat the symptoms of plaintiff's bladder flow obstruction due to BPH. Def.'s App. [D.E. 51-1], Jackson Decl. at ¶11. Plaintiff, by contrast, asserts that he has an overactive bladder, not bladder flow obstruction. See [D.E. 55] at 2; Compl. Attach. [D.E. 1-1] at 8, 11.

3

in the medical literature of increased risk of incidents of cardiac arrest, and for its abuse potential."[4] Id. at ¶12; see also Def.'s App. [D.E. 51-3] at 3.

On May 16, 2017, Dr. DeGuehery, plaintiff's primary care physician at Maury, filed an UR request to renew plaintiff's Oxybutynin prescription. Def.'s App. [D.E. 51-1], Jackson Decl. at ¶13; see also Def.'s App. [D.E. 51-4].

On or about May 26, 2017, defendant Jackson reviewed Dr. DeGuehery's UR request and referred the request for a pharmacist's comment. Def.'s App. [D.E. 51-1], Jackson Decl. at ¶13. The pharmacist's response notes: "Oxybutynin is only FDA approved to treat overactive bladder or neurogenic bladder. Oxybutynin is not FDA approved to treat bladder flow obstruction due to BPH . . . I did not see a urology consult in Document Manager recommending treatment with Oxybutynin." Id. at ¶15; see also Def.'s App. [D.E. 51-4]. The pharmacist suggested Tamsulosin (a.k.a. Flomax) and Finasteride as alternative medications. Def.'s App. [D.E. 51-1], Jackson Decl. at ¶16; see also Def.'s App. [D.E. 51-4]. Defendant Jackson then returned the UR request to Dr. DeGuehery with a note stating: "Please see pharmacy comments and consider. Thanks." Def.'s App. [D.E. 51-1], Jackson Decl. at ¶17; see also Def.'s App. [D.E. 51-4].

On May 30, 2017, Dr. DeGuehery discontinued plaintiff's Oxybutynin prescription. See Def.'s App. [D.E. 51-1], Jackson Decl. at ¶17; Def.'s App. [D.E. 51-4]. Plaintiff then was treated with Finasteride, Tamsulosin, and Terazosin (a.k.a. Hytrin).[5] [D.E. 55-1] at 7, 9, 15; [D.E. 16-1].

---

[4] Plaintiff asserts: he received great medical benefit from Oxybutynin with no side effects; he has no history of abusing Oxybutynin; his November 1, 2017, eco-cardiogram on was normal; and he has no pre-existing heart conditions. See [D.E. 55] at 3. By contrast, defendant Jackson declares that plaintiff's history of high blood pressure and age–61 years old–are factors that create an elevated risk of cardiac failure with Oxybutynin use, and that she considered these risk factors in her response to the UR request. Def.'s App. [D.E. 51-1], Jackson Decl. at ¶12.

[5] Plaintiff asserts he experienced negative side effects with Finasteride. Compl. Attach. [D.E. 1-1] at 2–3. The record also reflects plaintiff's June 2017 refusal to continue treatment with Finasteride. See [D.E. 55-1] at 31.

4

Legal Standard:

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

Discussion:

The Eighth Amendment "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." Wilson v. Seiter, 501 U.S. 294, 296–97 (1991) (internal citation omitted). To make out a *prima facie* case that prison conditions violate the Eighth Amendment, "a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quotation omitted). "[T]he first showing requires the court to

5

determine whether the deprivation of the basic human need was objectively sufficiently serious." Id. (emphasis and quotation omitted). The second showing "requires [the court] to determine whether subjectively the officials acted with a sufficiently culpable state of mind." Id. (emphasis, alteration, and quotation omitted). To satisfy the second, subjective showing, a plaintiff must prove the official acted with deliberate indifference. Id.; see Farmer v. Brennan, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.")

Deliberate indifference to a prisoner's serious medical needs violates the prisoner's Eighth Amendment rights. Estelle v. Gamble, 429 U.S. 97, 104 (1976). When a prisoner alleges that a prison official denied medical care, the prisoner must show the official knew of and disregarded an objectively serious condition, known medical need, or substantial risk of serious harm. See Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016); see also Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (noting a plaintiff "must demonstrate that the officers acted with 'deliberate indifference' (subjective) to [his] 'serious medical needs' (objective)." (quoting Estelle, 429 U.S. at 104)). A prisoner, however, is not entitled to choose his course of medical treatment. See Russell v. Sheffer, 528 F.2d 318, 318–19 (4th Cir. 1975) (per curiam). Disagreements over medications and forms of treatment concern medical judgments, not the Eighth Amendment, id., and mere negligence in diagnosis or treatment also does not state a constitutional claim, see Estelle, 429 U.S. at 105–06 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard–a showing of mere negligence will not meet it.").

6

The court presumes, without deciding, that plaintiff's medical condition is sufficiently serious to satisfy the Eighth Amendment inquiry's objective prong. See Iko, 535 F.3d at 241; Strickler, 989 F.2d at 1379. Plaintiff, however, fails to satisfy the subjective prong of this inquiry.

Defendant Jackson declares that, in her position as an UR physician, she reviews requests from primary care physicians for specialized healthcare to include some medications. Def.'s App. [D.E. 51-1], Jackson Decl. at ¶8. However, defendant Jackson neither directs plaintiff's plan of care nor prescribes his medications. Id. at ¶9. The record supports this declaration.

Although plaintiff contends that Oxybutynin is the most effective drug to treat his particular bladder condition, see [D.E. 45] at 2, [D.E. 55] at 2, as noted above, after a review of the medical literature indicating increased risk of cardiac arrest with Oxybutynin use, the DSP Pharmacy and Therapeutics Committee decided to require UR approval for Oxybutynin prescriptions. Def.'s App. [D.E. 51-3] at 3; Def.'s App. [D.E. 51-1], Jackson Decl. at ¶12. When Dr. DeGuehery sought UR approval to renew plaintiff's Oxybutynin prescription, defendant Jackson returned the request with a note for Dr. DeGuehery to consider the pharmacist's comments recommending alternative medications. Def.'s App. [D.E. 51-4]. Dr. DeGuehery then discontinued plaintiff's Oxybutynin prescription. Id. Plaintiff's desire to continue taking Oxybutynin despite these contrary medical decisions constitutes mere disagreement with his course of medical treatment that is insufficient for an Eighth Amendment claim. See Russell, 528 F.2d at 319.

To the extent plaintiff alleges that defendant Jackson's denial of the Oxybutynin renewal UR request conflicted with Dr. DeGuehery's medical opinion, see [D.E. 56] at 2–3, disagreement between medical professionals on the appropriate course of treatment also does not constitute deliberate indifference. See United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011).

7

To the extent plaintiff contends that defendant Jackson mistakenly relied on the pharmacist, failed to consult medical literature, and ignored plaintiff's positive results with Oxybutynin, see [D.E. 55] at 1–4, [D.E. 56] at 1–5, plaintiff alleges at worst, negligent medical care that falls well short of the "deliberate indifference to a serious medical need" required to establish a valid Eighth Amendment claim. See Estelle, 429 U.S. at 105–06; Grayson, 195 F.3d at 695 (4th Cir. 1999).

Although plaintiff asserts that he experienced dysuria and urinary burning after his Oxybutynin prescription was discontinued, see [D.E. 55] at 4, the record reflects that plaintiff's condition subsequently was treated with other medications. See [D.E. 55-1] at 7 (Feb. 2018 medical note stating that Finasteride was discontinued with no results), id. at 9 (July 2017 medical note stating plaintiff discontinued Finasteride), id. at 15 (June 2017 DPS grievance response noting plaintiff's medication regimen included Terazosin); see also [D.E. 16-1] at 1 (label indicating Dr. DeGuehery prescribed plaintiff Tamsulosin (a.k.a. Flomax) on March 12, 2018). Plaintiff also apparently refused to attend a June 2018 pelvic ultrasound appointment for complaints of polyuria, nocturia, and dysuria that was UR approved. See [D.E. 55-1] at 4. The record does not reflect that another UR request to resume plaintiff's Oxybutynin prescription was filed, or that defendant Jackson was aware of, or otherwise responsible for addressing, plaintiff's requests for medications to treat his ongoing medical concerns. See Def.'s App. [D.E. 51-1], Jackson Decl. at ¶¶19–20.

In sum, because there is no record evidence that defendant Jackson knew of and disregarded plaintiff's serious medical need, or that defendant Jackson acted with the requisite culpable state of mind, plaintiff fails to satisfy the Eighth Amendment inquiry's subjective prong. See Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (noting the Eighth Amendment inquiry's subjective prong requires proof of "actual subjective knowledge of both the inmate's

serious medical condition and the excessive risk posed by [the official's] action or inaction."); Scinto, 841 F.3d at 225 (noting "mere '[d]isagreements between an inmate and a physician over the inmate's proper medical care' are not actionable absent exceptional circumstances." (citation omitted)); Iko, 535 F.3d at 241; Strickler, 989 F.2d at 1379.

To the extent plaintiff instead contends that defendant Jackson, in her role as an UR physician, ultimately is responsible for the purported failure of plaintiff's primary care providers to adequately address plaintiff's ongoing medical issues, section 1983 claims against supervisors are cognizable when liability is premised upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984). Thus, for a supervisory liability claim under section 1983, a plaintiff must establish:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices . . ."; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (quotations omitted). The subordinate's conduct must be "pervasive," meaning "the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." Id. (quotation omitted).

Succinctly stated, plaintiff's contentions, even liberally construed, fail to satisfy the elements of a supervisory liability claim against defendant Jackson under the governing standard.

9

Accordingly, because no genuine issue of material fact exists, defendant Jackson is entitled to judgment as a matter of law. See Anderson, 477 U.S. at 249.

Alternatively, because defendant Jackson is a government official, she is entitled to qualified immunity from civil damages so long as her "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a defendant is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Here, because there is no showing that defendant Jackson violated plaintiff's constitutional rights, defendant Jackson likewise is entitled to a finding of qualified immunity.

## Conclusion:

For the reasons discussed above, the court: DISMISSES WITHOUT PREJUDICE the complaint as to defendant Almondin; GRANTS IN PART the motion for leave [D.E. 45]; GRANTS the motion for summary judgment [D.E. 48]; DISMISSES the complaint; and DIRECTS the clerk to close the case.

SO ORDERED, this 16th day of July 2020.

*Richard E. Myers II*
RICHARD E. MYERS II
United States District Judge

10